# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

BORJANA RADJEN and MILAN          )
RADJEN,                           )
    Plaintiffs,                )
                               )
v.                                )    CAUSE NO.: 2:08-CV-160-PRC
                               )
JON W. PARRISH, *et al.*,          )
    Defendants.                )

## OPINION AND ORDER

This matter is before the Court on Defendant, Joel Working's Motion for Summary Judgment [DE 34], filed by Defendant Joel Working on June 26, 2009, and a Defendants' Motion for Summary Judgment and Designation of Evidence [DE 38], filed by Defendants Sergeant Mike Lesiak, Officer Matt Kling, Detective Tim Crooks, Chief Jon W. Parrish, and Mayor Richard Hickman on July 31, 2009. The Plaintiffs have not filed a response brief to either Motion and the time to do so has passed. For the foregoing reasons, the Court hereby **GRANTS** the Defendant, Joel Working's Motion for Summary Judgment [DE 34] and the Defendants' Motion for Summary Judgment and Designation of Evidence [DE 38].

## PROCEDURAL BACKGROUND

On April 17, 2008, Plaintiffs Borjana Radjen and Milan Radjen filed a Complaint against Defendants, Jon W. Parrish, Mike Lesiak, Matt Kling, Tim Crooks, Frank Stewart, Joel Working, and Richard Hickman, alleging violations of Plaintiff Borjana Radjen's civil rights under 42 U.S.C. § 1983, and state law claims for battery, intentional infliction of emotional distress, negligent

infliction of emotional distress, and abuse of process.

On May 22, 2008, Defendants filed a Notice of Removal under 28 U.S.C. §§ 1441 and 1446 based on this Court's original and supplemental jurisdiction over the Plaintiffs' claims.

On June 16, 2008, Defendant Joel Working filed an Answer to Plaintiffs' Complaint. On September 4, 2008, this case was reassigned to Magistrate Judge Paul R. Cherry. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On June 26, 2009, Defendant Joel Working filed his Motion for Summary Judgment. Plaintiffs filed a Motion for extension of time to file their response brief on July 27, 2009, which the Court granted on July 28, 2009. Accordingly, Plaintiffs' response brief was due by August 25, 2009. However, Plaintiffs did not file a response brief.

On July 31, 2009, Defendants Mike Lesiak, Matt Kling, Tim Crooks, Jon W. Parrish, and Mayor Richard Hickman filed their Motion for Summary Judgment and Designation of Evidence. Accordingly, Plaintiffs' response brief was due by August 30, 2009. Plaintiffs did not file a response brief.


**FACTS**

On March 23, 2006, the Plaintiffs went to the office of Frank Stewart[1] to speak with him regarding his representation of Plaintiffs' son on misdemeanor charges for a minor consuming

---

[1] On April 22, 2009, the parties filed an Agreed Motion to Dismiss Frank Stewart as a party, which the Court granted on April 23, 2009. Accordingly, Frank Stewart is no longer a defendant in this case.

alcohol.[2]  A member of Defendant Stewart's staff, Tracy Deming, informed the Plaintiffs that they could not speak with him and asked them to leave.  Plaintiff Borjana Radjen refused to leave until she spoke to Defendant Stewart.  According to Ms. Deming's April 21, 2009 deposition testimony, she tried to explain to Mrs. Radjen that she could not speak with Frank Stewart because she was not his client.  After Mrs. Radjen would not listen, Ms. Deming turned to Mrs. Radjen's husband to talk to him and Mrs. Radjen started to yell at her.  Afterwards, Ms. Deming asked her daughter, who was also working at Frank Stewart's office, to call the police and tell them that there were individuals who refused to leave.

Defendant Michael Lesiak of the Angola Police Department was the first to respond to the call.  Defendant Tim Crooks arrived next.  After arriving at Frank Stewart's office, Defendant Lesiak spoke to Ms. Deming as Mrs. Radjen was trying to talk at the same time.  Defendant Lesiak then told the Plaintiffs that they had to leave.  Plaintiffs exited the office and Defendant Matthew Kling arrived on the scene.

According to Defendant Lesiak's April 21, 2009 deposition testimony, outside the building, on Plaintiffs' way to their car, Mrs. Radjen began yelling and approached Defendant Lesiak with her hands up as if she was going to strike him.  Defendant Crooks then intercepted Mrs. Radjen's arm and he and Defendant Lesiak placed their hands on Mrs. Radjen's arms to prevent her from touching them.  Defendant Kling then instructed Mrs. Radjen to put her arms behind her back, but she refused to do so and pulled away from the officers.  As the officers attempted to handcuff her, Mrs. Radjen fell to the ground.  She then grabbed a nearby metal fence or railing and refused to let go of it.  Defendant Kling attempted to pull Mrs. Radjen's hand from the fence, but was unable to

---

[2] In particular, the Plaintiffs' son's probation was revoked because he did not complete community service and did not undergo an alcohol evaluation.

do so. In response, Defendant Kling struck her radial nerve three times until she released her grip on the fence. Once she let go of the fence, Defendant Kling stopped hitting her. Defendants Kling and Lesiak then rolled Mrs. Radjen on her stomach and handcuffed her arms behind her back. Meanwhile, Plaintiff Milan Radjen instructed Mrs. Radjen to cooperate with the officers. Defendants Kling and Lesiak then picked Mrs. Radjen up because she refused to stand on her own. She was arrested for disorderly conduct.

According to Defendant Lesiak's deposition testimony, Mrs. Radjen then kicked at Defendant Lesiak as she was placed on the trunk area of Defendant Kling's patrol car in an attempt to gain control over her. Eventually leg shackles were placed on Mrs. Radjen. Afterward, Defendant Kling transported her to the Steuben County Jail ("the Jail").

Mrs. Radjen did not complain of any pain immediately following her arrest. Prior to the day of her arrest, Mrs. Radjen injured her back and neck at work and was receiving medical treatment for her back. Further, Mrs. Radjen previously had surgery on her wrist, which the Defendants were unaware of at the time of her arrest.

According to Plaintiff Borjana Radjen's February 17, 2009 deposition testimony, while at the Jail, a jailer there pulled her rings off her fingers, while she was still in handcuffs, in a manner that caused pain in her hand. Further, she asked if she could sit down because she was dizzy and the jailer threw her at the wall and onto the cement in the holding cell.

Shane Compton was a jailer on duty at the Jail when Officer Kling brought Mrs. Radjen there. According to Mr. Compton's April 21, 2009 deposition testimony, when he booked Mrs. Radjen, he noted in his paperwork that she did not complain of needing medical attention, although she had some abrasions to her hand and cheek or chin. Mrs. Radjen was then placed in a padded cell

because of her apparent aggressiveness and behavior. Mr. Compton denies placing his hands on Mrs. Radjen and provided in his deposition testimony that if he used any force, he would have had to complete a use of force form. No such form was completed.

On March 23, 2006, Richard Lewis was the Sheriff of Steuben County and had no personal involvement in processing, booking, or housing Plaintiff Borjana Radjen.

With regard to Defendant Working, the Complaint alleges that, "[u]nder color of law . . . WORKING . . . deprived [Plaintiff Borjana Radjen] of her rights, privileges and civil immunities secured by the United States Constitution in securing her arrest with excessive force." Compl. at ¶ 16. No allegations are made that he was involved in Mrs. Radjen's arrest or in processing her at the Jail.

On August 6, 2006, in court, Plaintiff Borjana Radjen pled guilty to disorderly conduct. Plaintiffs did not provide a Notice of Tort Claim to the City of Angola.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and

the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see*

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

Local Rule 7.1(a) provides that "[f]ailure to respond or reply within the time prescribed may subject the motion to summary ruling." N.D. Ind. L.R. 7.1(a). The trial court's interpretation and application of its Local Rules is subject to great deference. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Cuevas v. U.S.*, 317 F.3d 751, 752 (7th Cir. 2003), *cert. denied*, 540 U.S. 909, 124 S. Ct. 282, 157 L. Ed.2d 197 (2003); *Tenner v. Zurek*, 168 F.3d 328, 331 (7th Cir. 1999). In fact, a trial court has the authority to strictly enforce its Local Rules, even if summary judgment results. *Koszola v. Board of Education*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994) (upholding the trial court's strict

enforcement of local rules on summary judgment); *Franklin v. U.S. Steel Corp.*, No. 2:04-CV-246, 2006 WL 905914, at *1 (N.D. Ind. Apr. 7, 2006); *Jones v. Union Tank Car Co.*, No. 05-CV-22, 2006 WL 1195218, at *1 (N.D. Ind. May 4, 2006).

In turn, Rule 56(e) provides that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Fed.R.Civ.P. 56(e). The Rule further states that summary judgment, if appropriate, shall be entered against a party who fails to respond as provided in the Rule. *See* Rule 56(e). Thus, summary judgment is appropriate if the non-movant does not respond and the "motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir.1994).

### A. Capacity in which the suit is brought against Defendant Joel Working

As a preliminary matter, Defendant Joel Working contends that Plaintiffs' Complaint fails to allege a claim against him in his individual capacity and that the Court should construe Plaintiff Borjana Radjen's claims as being brought against him solely in his official capacity.

Here, the Plaintiffs' Complaint contains the caption "JOEL WORKING, *in his Official Capacity* as Sheriff of Steuben County." Pls.' Compl. at 1 (emphasis added). The record supports that Defendant Working, who is now deceased, was not the Sheriff of Steuben County on the date of the actions underlying the instant suit. Instead, the record supports that Richard Lewis was the Sheriff on March 23, 2006. Federal Rule of Civil Procedure 25(d) provides that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office *while the action is pending*. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d) (emphasis added). Here, however, Defendant Working did not

cease being the Sheriff of Steuben County during the pendency of the litigation. Rather, he was not the Sheriff when the instant suit was filed and was not the Sheriff on the date of the events underlying the instant suit. Accordingly, it does not appear that Rule 25(d) applies to the circumstances of this case. Nonetheless, the Court need not determine if Sheriff Richard Lewis should be substituted as a successor-Defendant in this matter because, as discussed below, even if the Court concludes that the official capacity suit survives and that Sheriff Richard Lewis be substituted for Defendant Working, the Plaintiffs' official capacity claim against the Sheriff of Steuben County fails on the merits.

Although the Plaintiffs' Complaint names the Sheriff of Steuben County in his official capacity, the Court's review of the entire Complaint reveals that the suit appears to be brought against the Sheriff in his individual capacity. In cases where the capacity in which a suit was brought against a public official was not specified, the Seventh Circuit previously held that a presumption existed that a suit was brought against a defendant in his official capacity when the caption of the complaint refers to the defendant by his official title.[3] *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985). Furthermore, the Seventh Circuit provided that a complaint alleging that the public official's conduct gives rise to liability under § 1983 also creates a presumption that the defendant was sued in his official capacity. *Id.* However, the Seventh Circuit later limited its holding in *Kolar* to cases in which the complaint specifically refers to the title of the public official and when "the indicia of an official policy or custom are present in the complaint." *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991).

---

[3] In *Kolar*, the Seventh Circuit found that the suit was brought against the defendants in their official capacity where the complaint referred to the defendants as "Gerald M. Sonquist, Kenosha County Sheriff" and "Carl Thomas, Sheriff." *Id.* at 568.

The Seventh Circuit later adopted a new standard for construing whether a suit was brought against a defendant in his official or individual capacity. *Id.* at 1374. The new standard requires the court to look to the relief requested to determine the plaintiff's intent, because "injunctive relief against a state official may be recovered only in an official capacity suit, so may punitive damages be recovered against a government actor only in an individual capacity suit." *Id.* Moreover, the court may look to the alleged conduct at issue. *Id.* If the official's individual actions are at issue, it is a suit in an individual capacity, whereas if the conduct is according to an official policy or custom, the suit is one in the official capacity. *Id.*

More recently, the Seventh Circuit has clarified its previous holdings and expressly rejected its holding in *Kolar*, reaffirming its approach in *Hill. Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). Accordingly, in the Seventh Circuit, "[w]here the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity." *Id.* Furthermore, when a defendant raises the defense of qualified immunity, the defendant concedes plaintiff's intention to bring an individual capacity suit because qualified immunity is "a defense available solely to officials facing § 1983 suits in their *individual* capacities." *Id.* (emphasis added).

Here, the Plaintiffs' Complaint requests compensatory damages, punitive damages, and attorney's fees for the alleged violation of Mrs. Radjen's constitutional rights. As previously noted, punitive damages are only recoverable in individual capacity suits. *Hill*, 924 F.2d at 1374. The Complaint also alleges that Defendant Working acted "[u]nder color of law . . . in securing [Mrs. Radjen's] arrest with excessive force." Pls.' Compl. at ¶ 16. This allegation of Defendant

Working's alleged tortious conduct while acting under color of state law is indicative of an individual capacity suit.

Further, in his Answer to Plaintiffs' Complaint, Defendant Working raises the defense of qualified immunity, which under the Seventh Circuit's recent holdings presumes that Defendant Working knew that the suit was brought against him in his individual capacity. *See* Def. Working's Answer at 8; *Miller*, 220 F.3d at 494. Therefore, this Court construes Plaintiffs' Complaint as alleging a cause of action against Defendant Working in his individual and official capacities.[4] The Court will analyze the Plaintiffs' § 1983 claims as both individual and official capacity claims.

## B. Claims arising under § 1983

Section 1983 of Title 42 of the United States Code guarantees:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . ."

To succeed on a claim brought under § 1983, the plaintiff must allege that the injurious acts were performed "under color of state law," and that the injurious acts deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Bayview-Lofberg's Inc. v. City of Milwaukee*, 905 F.2d 142, 144 (7th Cir. 1990).

*1. Individual Capacity Claim*

In order to state a claim for individual liability under § 1983, a plaintiff must allege that the defendant was personally involved in the deprivation of her constitutional rights. *Whitford v.*

---

[4] The suit against the remaining Defendants also appears to be in their individual and official capacities, as the Complaint makes a similar request for compensatory damages, punitive damages, and attorney fees, and the remaining Defendants raise the defense of qualified immunity.

*Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995). Although the defendant does not have to participate directly in the deprivation, the defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). "[S]ome causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Here, Plaintiffs' Complaint alleges that Defendants Working, Parrish, and Hickman violated Plaintiff Borjana Radjen's constitutional rights by securing her arrest with excessive force. Aside from this general allegation, however, Mrs. Radjen does not allege that these three defendants were involved in any manner in effectuating her arrest. Plaintiffs do not allege that Defendants Working, Parrish, and Hickman participated in Mrs. Radjen's arrest, or directed, knew about, or consented to, the alleged excessive force that occurred during her arrest and processing. Accordingly, Plaintiffs fail to establish a causal connection between the alleged unconstitutional conduct and Defendants Working, Parrish, and Hickman. Therefore, summary judgment must be granted in favor of these three defendants on the individual capacity claims.[5]

Nonetheless, Plaintiffs do allege that Defendants Lesiak, Kling, and Crooks were personally involved in effectuating Mrs. Radjen's arrest, and did so with excessive force. "Excessive force claims must be analyzed using the Fourth Amendment's 'reasonableness' standard." *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 862 (S.D. Ind. 2006). The "right to make an arrest . . .

---

[5] Additionally, to the extent that Sheriff Richard Lewis may be substituted for Defendant Working as a party defendant in this matter, summary judgment would also be granted as Plaintiffs make no allegations regarding his involvement in the alleged excessive force underlying the instant suit.

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, this right is not limitless. *Fidler*, 428 F. Supp. 2d at 862. To determine whether the force used to effectuate an arrest is "reasonable" under the Fourth Amendment requires the Court to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests that are at stake. *Morfin v. City of East Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003) (quoting *Graham*, 490 U.S. at 396). A "police officer's use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Fidler*, 428 F. Supp. 2d at 862 (quoting *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003)). The reasonableness test requires a court to evaluate the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting, or attempting to evade, arrest. *Morfin*, 349 F.3d at 1004-1005. The Court must evaluate these circumstances "from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396.

In the Plaintiffs' Complaint, they allege that two of the three Defendant police officers who arrived on the scene arrested Mrs. Radjen "after using excessive force to subdue her, while the third (3rd) officer looked on,"[6] and that after being told by Plaintiff Milan Radjen that Mrs. Radjen previously had surgery and could not place her arms behind her back, they forced Mrs. Radjen to place her arms behind her back and battered her in doing so. Pls.' Compl. at ¶ 12. Further,

---

[6] To the extent that the Plaintiffs attempt to allege that one of the officers failed to restrain the others from violating Plaintiff Borjana Radjen's rights, Mrs. Radjen would have to show that the officer had reason to know that excessive force was being used and that the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Fidler*, 428 F. Supp. 2d at 862.

Plaintiffs' Complaint alleges that Defendants Lesiak, Kling, and Crooks ("the Defendant officers")
continued to treat Mrs. Radjen "in a harsh and physically abusive manner and without any necessity
to do so whatsoever and without legal justification." *Id.* at ¶ 13. The Court will evaluate each
instance of physical contact by the Defendant officers to determine if they used excessive force.

The first instance of physical contact occurred when Defendant Crooks grabbed Plaintiff
Borjana Radjen's arm to prevent her from possibly striking Defendant Lesiak. According to
Defendant Crooks' April 21, 2009 deposition testimony, he grabbed Mrs. Radjen's arm in a blocking
manner, and caught her left arm to prevent her from striking Defendant Lesiak, as after hearing her
yell and appear highly agitated, he observed her raise up her hand as if she was going to strike
Defendant Lesiak. Although Mrs. Radjen was not yet under arrest, the Court finds that based on the
circumstances, a reasonable officer could have concluded that she posed an immediate threat to the
safety of the officers as she appeared ready to strike Defendant Lesiak. Further, there is no
indication from the record, nor do Plaintiffs argue, that Defendant Crooks twisted Mrs. Radjen's arm
or used an amount of force beyond that necessary to prevent her from possibly striking Defendant
Lesiak. Accordingly, this act did not constitute excessive force. *See Miller v. Lewis*, 381 F. Supp.
2d 773, 784 (N.D. Ill. 2005) (finding that where the defendant grabbed the plaintiff's arm in a
pinching grip, but did not wrench the plaintiff's arm or use it to slam him against a wall or other
similar action, there was no excessive force under the circumstances). Further, Defendants Kling
and Lesiak then grabbed Mrs. Radjen's arms and attempted to put them behind her back to handcuff
her, and there is no indication in the record that they used force beyond that necessary to arrest her.
Accordingly, this act also did not constitute excessive force. *Id.*

Next, after Mrs. Radjen fell to the ground, she grabbed onto a metal fence or railing and

refused to let go.  At her February 17, 2009 deposition, Mrs. Radjen inconsistently testified that an officer told her to let go of the railing, but later testified that she was not told to let go of it.  Viewing the facts in the light most favorable to the non-moving party, the Court will assume that no officer told her to let go of the railing.  Defendant Kling proceeded to attempt to pull her hand from the fence, but after failing to do so, he struck the radial nerve in her arm approximately three times to get her to release her hand from the fence.  Once she ceased holding on to the fence, Defendant Kling stopped hitting her.  Under these circumstances, the Court concludes that Defendant Kling's limited use of force was reasonable.  *See Nail v. Gutierrez*, No. 1:06-CV-292 PS, 2008 WL 4545332, at *6 (N.D. Ind. Oct. 19, 2008) (finding that the limited use of force to the needs of a situation supports the reasonableness of the use of force where the officers stopped using force once the plaintiff was subdued).  Here, Defendant Kling used force only to the extent that it was necessary to get Mrs. Radjen to release her grip on the fence, which was preventing the Defendant officers from arresting her, and ceased using force when she let go of the fence.  Accordingly, the fact that Defendant Kling limited his use of force to getting Mrs. Radjen to release the fence supports the reasonableness of his actions.

Next, Officers Kling and Lesiak attempted to arrest Mrs. Radjen by turning her onto her stomach, handcuffing her, and lifting her off the ground.  According to the Plaintiffs' February 17, 2009 deposition testimony, at the time of the arrest, Mrs. Radjen had a pre-existing pinched nerve in her lower back for which she received shots, resulting from a work related injury.  Because of this condition, Mrs. Radjen allegedly was unable to put her hands behind her back.  According to Plaintiff Milan Radjen's deposition, while the Defendant officers attempted to arrest Mrs. Radjen as she was lying on the ground, she screamed that she could not put her hands behind her back.  The

record supports that Mrs. Radjen did not tell the Defendant officers that she could not do so because of her back injury. Although Plaintiff Milan Radjen testified at his deposition that he attempted to tell them that she could not put her hands behind her back, the Defendant officers testified at their depositions that they did not recall being told about her back injury, and the record does not support that Milan told them about the injury. Further, although Plaintiff Milan Radjen testified that Mrs. Radjen was being cooperative with the officers, he also provided that she was struggling with the officers, resulting in him telling her to cooperate. Next, when attempting to lift Mrs. Radjen off the ground, she continued to tell the officers that she could not get up and then refused to stand up on her own, resulting in Defendants Kling and Lesiak having to lift her up themselves. Once again, the record does not support that she told the Defendant officers about her back injury. After reviewing the record, the Court finds that a reasonable officer could conclude that Mrs. Radjen was actively resisting arrest by failing to cooperate in putting her hands behind her back and failing to stand up under her own power. Accordingly, the Court finds that Defendants Lesiak and Kling did not use excessive force in handcuffing and lifting up Mrs. Radjen.[7]

The next incident of physical contact occurred when Defendant Lesiak placed Plaintiff Borjana Radjen on the trunk of the patrol car. According to Defendants, Mrs. Radjen was kicking at Defendant Lesiak as he placed her on the trunk in an attempt to control her. At his February 17, 2009 deposition, Plaintiff Milan Radjen testified that Defendant Lesiak threw Mrs. Radjen against the trunk of the patrol car and attempted to keep her head down by "pulling her hair down." Defs.' Mot. Summ. J., Ex. C at 39:16-17. Given Mrs. Radjen's continuous struggle with the Defendant

---

[7] This conclusion is further supported by an absence in the record of evidence indicating that Defendants Lesiak and Kling used further physical force in attempting to arrest Mrs. Radjen (such as twisting her arms) and lift her up.

officers, even assuming that Defendant Lesiak threw Mrs. Radjen against the trunk of the patrol car, this would not have constituted excessive force under the circumstances in an effort to gain control over the situation.  *See Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (finding that no excessive force was used where the officers stopped an apparently fleeing suspect, pulled him out of his car, pinned his arms behind his back, slammed him against the hood of his car, and handcuffed him).  Further, to the extent that Defendant Lesiak threw Mrs. Radjen against the trunk, there is no indication from the record as to the amount of force that he used in doing so.  Accordingly, the Court concludes that a reasonable officer would have thought that Mrs. Radjen was continuing to struggle with the officers and that the officer needed to gain physical control over her.  Therefore, Defendant Lesiak did not use excessive force under the circumstances.

Finally, Mrs. Radjen was placed in leg shackles and Defendant Kling placed her into his patrol car by pushing her on her right hip.  According to her February 17, 2009 deposition testimony, once she was in the patrol car, no one did anything to her.  Accordingly, the Court finds that no excessive force was used in placing Mrs. Radjen in the patrol car.[8]

Next, the Defendant officers argue that there is no evidence that Mrs. Radjen sustained anything more than minor injuries, and this indicates that excessive force was not used against her. The extent of an injury is a relevant factor in determining whether excessive force is used, but no particular degree of injury is required.  *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008).  At her deposition, Mrs. Radjen testified that as a result of the struggle with the officers in trying to effectuate her arrest, she scratched her face and her knees.  Further, she testified that she sustained

---

[8] Although Plaintiffs allege that excessive force was used against Borjana Radjen when she arrived at the jail, none of the Defendant officers are alleged to have participated in these activities.

bruises along her body when she was at the jail and that her arms and her back were in pain. With regard to the scratches that she obtained during the arrest, Plaintiffs offer no evidence or medical records as to the severity of those injuries. *See Nail*, 2008 WL 4545332 at *6 (finding that the extent of the plaintiff's injuries were insufficient to show excessive force where he offered no evidence or medical records as to the severity of those injuries, resulting in the inference that the injuries were not severe). In fact, Plaintiff Milan Radjen testified at his deposition that Mrs. Radjen "didn't receive too much of treatment because it was all bruises then. She was too sore to be treated for anything specific." Defs.' Mot. Summ J., Ex. C at 64:17-18. As for the bruises she sustained at the Jail, the record is undisputed in that the Defendant officers were not involved in any of the alleged excessive force used at the Jail, and the Court has already determined that Defendants Working (or his successor), Parrish, and Hickman were not involved either. Further, Plaintiffs have failed to show that Mrs. Radjen's arm and back pain were unrelated to her already preexisting back injury. Therefore, on the basis of the record, the Court finds that the extent of Mrs. Radjen's injuries does not support that the Defendant officers used excessive force.

Accordingly, because the Court concludes that Defendants Crooks, Lesiak, and Kling did not use excessive force in effectuating Mrs. Radjen's arrest, summary judgment must be granted in their favor on the individual capacity claims.[9]

---

[9] To the extent that Plaintiffs allege that one of the officers, presumably Defendant Crooks, failed to restrain the others from violating Mrs. Radjen's rights, because the Court finds that none of the officers used excessive force, the claim would fail as the officer would have no reason to know that excessive force was being used. *See Fidler*, 428 F. Supp. 2d at 862.

*2. Official Capacity Claims*

Further, to the extent that the Plaintiffs properly alleged official capacity claims against the Defendants, their claims would also fail. An "official capacity suit is tantamount to a claim against the government entity itself." *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). In order to establish an official capacity claim against the Defendants, Mrs. Radjen must demonstrate that she suffered deliberate indifference as a result of a custom or policy established by the officials. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). In this context, three forms of unconstitutional policies or customs have been recognized:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or used with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008) (quoting *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003)).

Here, in the Complaint, Mrs. Radjen does not invoke an express policy or widespread practice, and the record fails to support such a policy or practice permitting excessive force against individuals taken into custody and placed at the Jail.

Further, Mrs. Radjen does not allege that a widespread practice exists that is so permanent and well settled that it constitutes a custom or is used with the force of law. To succeed on a "widespread practice" claim, "proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003). A review of the Plaintiffs' Complaint reveals that Mrs. Radjen alleges a violation of her constitutional rights based on the March 23, 2006 arrest and her

treatment while at the Jail. Plaintiffs' Complaint fails to allege a series of constitutional violations that would constitute a widespread unconstitutional practice that is a custom or usage with the force of law. *See id.* (finding that the plaintiff's alleged personal knowledge of two incidents of misconduct by correctional officers failed to show a widespread unconstitutional practice by the jail's staff sufficient to constitute a custom or usage with the force of law).

Finally, Mrs. Radjen is unable to show that her alleged constitutional injury was caused by a person with final policy-making authority. "[W]hether a particular official has 'final policymaking authority' is a question of state law." *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Under Indiana law, "the county sheriff is the final policymaker for law enforcement in his or her particular jurisdiction." *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995). Further, a police chief is the final policymaker for his municipal police department. *Id.* Here, other than general allegations in Plaintiffs' Complaint that Defendants Jon Parrish (as the Chief of Police for the City of Angola), Joel Working (as the Sheriff of Steuben County), and Richard Hickman[10] (as the Mayor of the City of Angola) violated Mrs. Radjen's constitutional rights by securing her arrest with excessive force, Mrs. Radjen has failed to allege that any of these three Defendants were involved in her arrest and processing at the Jail, that they made the decision to arrest her with excessive force, or that they had final policymaking authority and exercised that authority in establishing a policy to allegedly violate her constitutional rights.[11] Further, the remaining Defendants are not policymakers. *See Thomas v. City of Fort Wayne*, No. 1:06-CV-320 PS, 2008 WL 282348, at *8 (N.D. Ind. Jan. 31, 2008) (providing that "[b]eat cops like the defendants . . . are clearly not

---

[10] For the reasons set forth below, the Court need not determine whether Defendant Hickman, as the Mayor of the City of Angola, is a final policymaker.

[11] The Court makes the same conclusion as to Sheriff Richard Lewis.

policymakers . . .").

The Court finds that the Plaintiff Borjana Radjen has failed to raise a genuine issue of material fact as to her official capacity claims against the Defendants. Accordingly, the Motions for Summary Judgment must be granted as to Plaintiff Borjana Radjen's § 1983 official capacity claim.

*3. Qualified Immunity*

In support of their Motion for Summary Judgment, the Defendant officers contend that even if there was a violation of Mrs. Radjen's constitutional rights, they are entitled to qualified immunity.

Government officials performing discretionary functions are protected from liability by qualified immunity. *Leaf v. Shelnutt*, 400 F.3d 1070, 1079 (7th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). Qualified immunity is broad and provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity leaves "'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley*, 475 U.S. at 343). It does not protect officers, however, if they (1) violate clearly established law (2) that a reasonable officer should have known about. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The qualified immunity inquiry is two-fold. First, a court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, the court must determine if the right was clearly established at the time of the violation. *Id.*

Given that the Court has found that Mrs. Radjen has suffered no constitutional injury, "it is

unnecessary to consider whether [Defendants Lesiak, Kling, and Crooks are] entitled to qualified immunity." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 n. 4 (7th Cir. 1995).

## B. State Law Claims

In support of their Motions for Summary Judgment, the Defendants argue that they are entitled to summary judgment on the Plaintiffs' state law claims as the Plaintiffs failed to file a Notice of Tort Claim, thereby failing to comply with the notice provisions of the Indiana Tort Claims Act ("ITCA"). Further, the Defendant officers argue that they are entitled to immunity under the ITCA because they engaged in the alleged excessive force while enforcing the law. The Court addresses each in turn.

*1. Compliance with the notice requirements under the ITCA*

The ITCA requires, as a prerequisite to a tort action, that notice to a political subdivision be filed within 180 days of the occurrence of the loss:

> Except as provided in section 9 of this chapter, a claim against a political subdivision is barred unless notice is filed with:
> (1) the governing body of that political subdivision; and
> (2) the Indiana political subdivision risk management commission created under IC 27-1-29; within one hundred eight (180) days after the loss occurs.

Ind. Code § 34-13-3-8.

"A person may not initiate a suit against a governmental entity unless the person's claim has been denied in whole or in part." *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (citing Ind. Code § 34-13-3-13). The ITCA also applies to suits against employees of political subdivisions. *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992). However, governmental employment, standing alone, does not trigger the notice provision of the ITCA. *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996). Rather, notice is required only

if "the act or omission causing the plaintiff's loss is within the scope of the defendant's employment." *Id.*

"Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove and which the trial court must determine before trial." *Alexander*, 256 F. Supp. 2d at 875. Once a defendant raises the plaintiff's failure to comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance. *Id.* Here, while the ITCA notice requirements are inapplicable to the Plaintiffs' § 1983 claim, they do apply to the pendent state law claims. *Id.*

As a preliminary matter, in support of his Motion for Summary Judgment, Defendant Working argues that summary judgment must be granted in his favor on the Plaintiffs' state law claims. Plaintiffs' Complaint alleges state law claims of battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process.[12] However, a review of the Complaint reveals that the allegations contained in the state law claims are solely made against Defendants Lesiak, Kling, Crooks, and former Defendant Stewart.[13] Because the ITCA notice provision applies to pendent state law claims made within a § 1983 suit, and no such claims have been made against Defendant Working, Plaintiffs were not required to file a Notice of Tort Claim with regard to Defendant Working.[14]

---

[12] This claim was alleged solely against Defendant Stewart who has since been dismissed as a Defendant to this case.

[13] While Plaintiffs' Complaint alleges that "[a]fter BORJANA was transported to the Steuben County Jail, agent(s)/employee(s) of Working at the Steuben County Jail further battered BORJANA, without any necessity to do so whatsoever and without any legal justification," Plaintiffs do not allege that Defendant Working was himself involved in the alleged battery. Pls.' Compl. at ¶ 14.

[14] Further, because Plaintiffs did not allege the state law claims against Defendants Parrish and Hickman, they were not required to file a Notice of Tort Claim with regard to the claims against these Defendants.

Nonetheless, Plaintiffs were required to comply with the ITCA's notice provisions as to their claims for battery, intentional infliction of emotional distress, and negligent infliction of emotional distress against the Defendant officers. These state law claims arise out of the Defendant officers' actions in arresting Mrs. Radjen and they were acting within the scope of their employment as police officers with the City of Angola when effectuating the arrest. *See Ramusack v. Swanson*, No. 2:04-CV-226PS, 2005 WL 3359114, at *11 (N.D. Ind. Dec. 9, 2005) (finding that conducting an arrest was within the scope of a police officer's employment). Accordingly, there is a causal connection between the injuries that the Plaintiffs sustained and the Defendant officers' employment by a political subdivision, requiring Plaintiffs to give notice pursuant to the ITCA. Plaintiffs have failed to provide evidence indicating that they filed a notice of tort claim in this matter. Accordingly, Plaintiffs' state law claims are barred and summary judgment must be granted in favor of the Defendant officers on the state law claims.

### 2. Immunity under the ITCA

Assuming that Plaintiffs did comply with the ITCA's notice provisions, the Defendant officers argue that they are immune from liability on the state law claims. "When acting within the scope of employment, government employees are immune from tort liability if the loss results from '[t]he adoption and enforcement of or failure to enforce a law.'" *Becker v. Porter County Sheriff's Dept.*, Cause No. 2:06-CV-350 JVB, 2009 WL 500562, at *6 (N.D. Ind. Feb. 27, 2009) (quoting Ind.Code § 34-13-3-3(8)). This immunity applies even where the officer's conduct is contrary to law. *Id.*

Here, the Plaintiffs' Complaint alleges that the Defendant officers used excessive force in restraining Mrs. Radjen, by forcing her to place her arms behind her back, resulting in battery. *See*

Pls.' Compl. ¶¶ 12, 19.  As already noted in this Order, the record does not support that the Defendant officers used excessive force in effectuating Mrs. Radjen's arrest.  The Defendant officers acted within the scope of their employment when arresting Mrs. Radjen and were enforcing the law while arresting her for disorderly conduct.  *See Ramusack*, 2005 WL 3359114, at *11 (finding that the defendant officer acted within the scope of his employment when making an arrest).  The allegation of battery occurring during the arrest is closely associated with the Defendant officers' employment as police officers.  Accordingly, the Defendant officers are entitled to immunity and summary judgment must be granted on Plaintiffs' battery claim.

Next, Plaintiffs' Complaint alleges that the Defendant officers abused their power and intentionally humiliated the Plaintiffs in arresting Mrs. Radjen without probable cause, battering her while Plaintiff Milan Radjen watched, and in making derogatory ethnic remarks, resulting in intentional infliction of emotional distress.  Once again, these allegations relate to Mrs. Radjen's arrest, which was effectuated within the Defendant officers' scope of employment and in an attempt to enforce the law.  Accordingly, the Defendant officers are entitled to immunity and summary judgment must be granted on Plaintiffs' intentional infliction of emotional distress claim. *See Kocon v. Lake County Sheriff's Dep't*, No. 2:06-CV-13-PRC, 2007 WL 1959239, at *11 (N.D. Ind. June 29, 2007) (finding that defendants were protected by the ITCA's qualified immunity provision against a claim for intentional infliction of emotional distress).

Finally, Plaintiffs' Complaint alleges that the Defendant officers, in allegedly beating and restraining Mrs. Radjen with excessive force, caused Plaintiff Milan Radjen severe shock in observing the alleged beating, and resulted in negligent infliction of emotional distress.  Once again, these allegations arise out of Mrs. Radjen's arrest, which was effectuated within the Defendant

officer's course of employment in their attempt to enforce the law. Therefore, the Defendant officers are entitled to immunity and summary judgment must be granted on Plaintiffs' negligent infliction of emotional distress claim. *See Jordan v. City of Indianapolis*, No. IP 01-1391-C H/K, 2002 WL 32067277, at *11 (S.D. Ind. Dec. 19, 2002) (providing that "Indiana courts have recognized that the ITCA grants immunity to police officers for negligent and intentional torts committed while effecting an arrest").

Accordingly, because the Court has found that Plaintiffs failed to comply with the ITCA's notice provision and, nonetheless, the Defendant officers would be immune from liability, summary judgment must be granted on Plaintiffs' state law claims.


## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant, Joel Working's Motion for Summary Judgment [DE 34] and Defendants' Motion for Summary Judgment and Designation of Evidence [DE 38]. Summary judgment is hereby **ORDERED** in favor of Defendants Jon W. Parrish, Mike Lesiak, Matt Kling, Tim Crooks, Joel Working, and Richard Hickman, against Plaintiffs Borjana Radjen and Milan Radjen. Plaintiffs Borjana Radjen and Milan Radjen shall take nothing by their Complaint in this case against Defendants Jon W. Parrish, Mike Lesiak, Matt Kling, Tim Crooks, Joel Working, and Richard Hickman.

SO ORDERED this 21st day of September, 2009.

                    s/ Paul R. Cherry
                  MAGISTRATE JUDGE PAUL R. CHERRY
                  UNITED STATES DISTRICT COURT

cc:      All counsel of record